UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **CHESAPEAKE LOUISIANA, L.P.,** | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CAUSE NO. 2:10-CV-359-JRG |
| | § | |
| **BUFFCO PRODUCTION, INC., ET AL.,** | § | |
| *Defendants.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Wayne E. Freeman, Freeman Resources, Ltd., and FRM GP, LLC (collectively, the "Freeman Defendants") (citizens of Texas) and Freeman Capital, Ltd.'s ("Freeman Capital") (citizens of Texas) Motion to Dismiss for Want of Subject-Matter Jurisdiction (Dkt. No. 197), filed April 13, 2012. The Court, having considered the parties' submissions, hereby DENIES the motion.

### I. Factual Background and Procedural Posture

Chesapeake Louisiana, L.P. ("Chesapeake") (citizen of Oklahoma) filed this lawsuit on September 13, 2010 and alleged that this Court had subject-matter jurisdiction over the dispute pursuant to 28 U.S.C. § 1332. The claims in this lawsuit arise out of a July 31, 2008 Letter Agreement (the "Letter Agreement") entered into between Chesapeake and Buffco Production, Inc. and Twin Resources, LLC (collectively, "Buffco") (citizens of Texas). Pursuant to the Letter Agreement, Chesapeake would acquire the working interests of Buffco and its non-operating leasehold cotenants as to multiple oil and gas units in several counties in East Texas, as described in exhibits to the Letter Agreement.

The Letter Agreement expressly included a "Non-Ops Clause," as the second full paragraph on Page 2 thereof, by which Chesapeake agreed to make the same offer under the same terms to the owners of non-operating working interests in these properties. This Court has construed the Non-Ops Clause to mean that Chesapeake intended to acquire all of the leasehold estate beneath the properties described in the exhibits to the Agreement. This construction is supported by other provisions in the Letter Agreement which call for delivery of not less than a full 75% net revenue interest in each unit to be

acquired by Chesapeake. Non-operating working interest owners included Freeman Capital and Intervenor Harleton Oil & Gas, Inc. ("Harleton") (citizen of Texas).

Chesapeake inaccurately determined (through a contract landman) that one of the specific properties in question, the Geisler Unit in Harrison County, Texas, was owned 50% by Buffco and 50% by Freeman. It is undisputed that the correct tabulation of the working interests of record in the Geisler Unit (as of the closing with Chesapeake) was in fact: Buffco – 25%, Freeman – 22%, Freeman Capital – 3%, and Harleton – 50%, and that Buffco was the sole operator of this unit.

At closing, and due to its misunderstanding as to the ownership of the Geisler Unit, Chesapeake paid the full amount called for in the Letter Agreement ($13,600,000 for the 680-acre Geisler Unit – being a per net acre price of $20,000) to Buffco; and in turn, Buffco immediately delivered half of these funds to Freeman. Buffco and Freeman each received $6,800,000 based on Chesapeake's mistaken belief that each owned a 50% interest in the leasehold estate beneath the Geisler Unit. It is undisputed that Harleton and Freeman Capital received none of these funds at the closing or subsequently. It is also undisputed that neither Buffco nor Freeman informed Chesapeake of the correct record ownership in the Geisler Unit prior to, at or subsequent to closing.

Freeman Capital and Harleton never received payment for their 3% and 50% interests in the Geisler Unit, respectively, and each has yet to execute and deliver assignments of their leasehold rights to Chesapeake, though they profess that they are each ready, willing and able to do so upon receipt of the amounts due pursuant to the Letter Agreement for their respective interests. Chesapeake anticipated, by means of its entering into the Letter Agreement and funding the subsequent closing as to the Geisler Unit, that it would obtain all of the record title to the working interests beneath this 680-acre gas unit for the total price of $13,600,000. However, in light of this subsequent litigation and the undisputed facts presented to the Court, it is now clear that Chesapeake only received a 47% interest in the Geisler Unit while paying at closing the full purchase price for the same as called for in the Letter Agreement.

Since Harleton never received payment for its 50% interest in the Geisler Unit, it filed a Complaint in Intervention pursuant to Federal Rule of Civil Procedure 24(a) on October 28, 2010

(followed by an Amended Intervenor Complaint on March 14, 2011) seeking relief as a part of this action. On October 27, 2010, this Court granted Harleton's motion to intervene, implicitly finding that it retained proper subject-matter jurisdiction despite the party's intervention.

Following extensive summary judgment briefing and a hearing regarding the same, the Court entered a Memorandum Opinion and Order on March 22, 2012 (the "March 22 Order"), finding that the Letter Agreement was enforceable against Chesapeake, and as such, Chesapeake could not recoup or recapture the $6.8 million that it claimed (as part of its Original Complaint) was owed to it by Buffco and Freeman regarding the Geisler Unit. At the same time, the Court found that Chesapeake bargained for a 100% interest in the Geisler Unit as part of the Agreement, and as such, was owed an assignment of all interests in the same (including Freeman Capital and Harleton's interests). Accordingly, because Buffco and Freeman held all the monies paid by Chesapeake for the interests of Freeman Capital and Harleton, the Court imposed a constructive trust on that portion of the total funds due to Freeman Capital and Harleton. The Court ordered Buffco and Freeman, as constructive trustees, to pay to Freeman Capital and Harleton the proportion of the total funds (3% and 50% respectively) that related to such working interests, and ordered them, as constructive beneficiaries, to assign all their right, title and interest in the Geisler Unit to Chesapeake.

On April 13, 2012, the Freeman Defendants filed the instant Motion to Dismiss, claiming that the Court's March 22 Order revealed a lack of subject-matter jurisdiction over Harleton, an indispensable party to the litigation, as an intervening plaintiff whose presence vitiates diversity jurisdiction. They base this argument on 28 U.S.C. § 1367 (the supplemental jurisdiction statute) that provides federal courts with supplemental jurisdiction over all claims that are so related to claims in the action within a court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Freeman argues that section (b) of the statue provides that, where the court's original jurisdiction is based on diversity of citizenship, a court may not have supplemental jurisdiction over claims by *plaintiffs* who intervene under Rule 24. 28 U.S.C. § 1367(b) (emphasis added). The Freeman Defendants argue that if

Harleton is properly viewed as an intervenor-plaintiff, then § 1367 would defeat this Court's subject-matter jurisdiction.

## II. Legal Standard

A federal court may have subject-matter jurisdiction over any given dispute in one of two ways: pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) or pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The instant situation involves whether the Court is properly exercising diversity jurisdiction. Diversity jurisdiction requires "complete diversity" among the parties such that the presence in the action of a single plaintiff from the same state as a single defendant deprives a court of original diversity jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 553 (2005). Because Harleton is not an original party to this lawsuit but rather, is an intervenor, the Court must decide whether Harleton should be aligned as an intervenor-plaintiff or as an intervenor-defendant to determine whether the Court continues to properly exercise subject-matter jurisdiction over the dispute. *See Griffin v. Lee,* 621 F.3d 380, 388 (5th Cir. 2010). In ascertaining the proper alignment of an intervenor for jurisdictional purposes, courts have a duty to "look beyond the pleadings, and arrange the parties according to their sides of the dispute." *Id.* (citing *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941)). Further, whether the necessary "collision of interest" exists must be ascertained from the "principal purpose of the suit" and the "primary and controlling matter in dispute." *Id.* The court is not bound by how the parties have pleaded their status or bound to analyze the various cross and counter-claims filed, but rather, should consider the Plaintiff's principal purpose for filing the suit. *See Zurn Indus., Inc. v. Acton Const. Co., Inc.,* 847 F. 2d 234, 237 (5th Cir. 1988).[1]

---

[1] The Freeman Defendants argue that *Zurn* is inapplicable because it pre-dates the 1990 enactment of 28 U.S.C. § 1367 and does not involve an intervenor. However, the Court agrees with Harleton and Chesapeake that Congress did not abrogate the principles of *Zurn* by enacting § 1367 and that post-1990 case law continues to be guided by the *Zurn* analysis for aligning parties for jurisdictional purposes.

### III.     Analysis

First and foremost, the Court finds that it implicitly determined that it retained proper subject-matter jurisdiction over this dispute by granting Harleton's motion to intervene on October 27, 2010. That notwithstanding and for the purposes of the instant motion, the Court finds that Harleton is properly aligned as an intervenor-defendant.

Chesapeake filed the instant lawsuit in the posture of a buyer under a contract against those it understood to be all the appropriate sellers to recover an overpayment for something it paid for, but did not receive. Harleton, as an appropriate seller who was not included in the lawsuit, intervened to assert its rights under the contract against Chesapeake. This is the heart of the dispute. Harleton is properly aligned as a defendant, standing in the same posture as Freeman Capital (who was originally named as a defendant and represented by Freeman's counsel, although Chesapeake dropped its claims against Freeman Capital). In fact, at the March 20, 2012 hearing on the competing motions for summary judgment in this case, Freeman's counsel admitted that Freeman Capital and Harleton were similarly situated parties in the action and were "truly in the exact same boat when it comes to this contract." Hearing Transcript, Dkt. No. 199, 93:18-21. The Court agrees that Freeman Capital and Harleton have nearly identical interests in this lawsuit. They both seek to enforce the contract against Chesapeake and receive payment for their respective interests in the Geisler Unit. This clearly supports both parties' proper alignment as defendants in this case.

Further, Chesapeake and Harleton could not be classified as sharing the same interest in the suit because both are openly competing to capture the same pot of money – the $6.8 million. The dollars awarded to Harleton through this Court's March 22 Order were the same dollars sought by Chesapeake in its Original Complaint.

Although Chesapeake and Harleton prevailed upon summary judgment, this does not change the fact that the "primary and controlling matter" in dispute involves a breach of contract with Chesapeake on one side and all of the sellers (including Harleton) on the other. Because Harleton is properly aligned as

5

an intervenor-defendant, its status does not divest the Court of subject-matter jurisdiction and thus, an analysis of § 1367 is not warranted.

### IV. Conclusion

Based on the foregoing, the Court finds that Intervenor Harleton Oil & Gas, Inc. is properly aligned as an intervenor-defendant. Accordingly, this Court has and maintains subject-matter jurisdiction in this case. The Freeman Defendant's Motion to Dismiss for Want of Subject-Matter Jurisdiction is DENIED.

**So ORDERED and SIGNED this 7th day of June, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE