IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **CHESAPEAKE LOUISIANA, L.P.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 2:10-CV-359 (JRG)** |
| | § | |
| **BUFFCO PRODUCTION, INC., ET AL.,** | § | |
| | § | |
| *Defendants.* | § | |

**FREEMAN DEFENDANTS' AND FREEMAN CAPITAL'S
OPENING BRIEF ADDRESSING INDISPENSABILITY ISSUES**

Pursuant to the Court's request, Defendants Wayne E. Freeman, Freeman Resources, Ltd., and FRM GP, LLC (collectively, the "Freeman Defendants") and Freeman Capital, Ltd. ("Freeman Capital") hereby file this Opening Brief Addressing Indispensability Issues and respectfully show the Court as follows:

**I.   INTRODUCTION**

The issue before the Court is whether intervenor Harleton Oil & Gas, Inc. ("Harleton") is indispensable to the claims that remain in the case following this Court's prior summary judgment and the Fifth Circuit's opinion dated May 7, 2014—namely, those asserted (i) by Chesapeake Louisiana, L.P. ("Chesapeake") against the Freeman Defendants and (ii) by Freeman Capital against Chesapeake. The parties' Joint Status Report [Dkt. No. 234] sets out the background facts relevant to the determination of that issue, and the Freeman Defendants and Freeman Capital incorporate those facts by reference into this Brief as though they were set forth fully herein.[1] As explained in the Joint Status Report, all of the remaining claims arise out of the July 31, 2008 Letter Agreement and relate solely to the parties' respective rights and interests in

---

[1] Unless otherwise defined herein, capitalized terms have that meaning ascribed to them in the Joint Status Report.

the Geisler Gas Unit No. 1 (the "Geisler")—a 680 acre gas unit located in Harrison County, Texas.

Federal Rule of Civil Procedure 19(b) and controlling case law mandate that Chesapeake's and Freeman Capital's remaining claims be dismissed because Harleton is indispensable to those claims. The dismissal will not prejudice Chesapeake or Freeman Capital because they have an alternative forum for their claims—specifically, the pending Harrison County lawsuit that Harleton filed in June 2012 for its claims related to the Letter Agreement and the Geisler. That action is styled and numbered as *Harleton Oil & Gas, Inc. v. Bufkin, et al.*, No. 12-0517, in the 71st District Court of Harrison County, Texas (the "Harrison County Lawsuit").[2] In contrast, the Freeman Defendants will suffer prejudice if Chesapeake's Geisler claims are not dismissed because they will be forced to simultaneously try the same issues in two different forums, thereby creating the risk of inconsistent judgments and double liability. Furthermore, the public's interest in efficient and consistent resolution of disputes weighs in favor of permitting the parties to resolve these factually intertwined claims together in the Harrison County Lawsuit. At bottom, there is simply no reason to try these interrelated claims separately. Since the Fifth Circuit has determined that they cannot all be tried together in federal court, this Court should (i) determine that Harleton is an indispensable party, and (ii) dismiss the claims remaining before it so that they may be tried together with Harleton's claims in state court.

The Freeman Defendants and Freeman Capital thus respectfully request the Court to dismiss the remainder of this action so that all of the Geisler claims, including those asserted by Harleton, may be resolved in the Harrison County Lawsuit.

---

[2] Both Chesapeake and Freeman Capital are named parties to the Harrison County Lawsuit (as are the Freeman Defendants and the Bufkin Defendants).

## II.     ARGUMENT AND AUTHORITIES

A.     **The Legal Framework.**

The Fifth Circuit has already determined that Harleton is a party that should be joined, if feasible, under Rule 19(a) of the Federal Rules of Civil Procedure and has directed this Court to determine only whether Harleton is "an indispensable party such that dismissal of the entire action concerning the Geisler Unit is required." *See Chesapeake Louisiana, L.P. v. Buffco Prod., Inc., et al.*, No. 13-40458, 2014 WL 1797822 at *8 (5th Cir. May 7, 2014). Federal Rule of Civil Procedure 19(b) guides the indispensability analysis. That Rule sets out four factors that the Court should evaluate in order to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed":

> (1)   the extent to which a judgment rendered in [Harleton's] absence might prejudice [Harleton] or the existing parties;
>
> (2)   the extent to which any prejudice could be lessened or avoided by:
>
>> (A)   protective provisions in the judgment;
>>
>> (B)   shaping the relief; or
>>
>> (C)   other measures;
>
> (3)   whether a judgment rendered in [Harleton's] absence would be adequate; and
>
> (4)   whether [Chesapeake] would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b). These factors should not be applied mechanically but, rather, should be applied pragmatically, taking into account the realities of the situation. *See Schutten v. Shell Oil Co.*, 421 F.2d 869, 873-74 (5th Cir. 1970).

The Supreme Court has explained that these factors aim to protect the interests of four distinct groups—the plaintiff, the defendant, the absentee, and the public—and directed that each

of those interests be considered. *See Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–11 (1968); *see also Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1312 (5th Cir. 1986). As such, in making the indispensability determination, the Court should consider (i) "the plaintiff's interest in a federal forum," (ii) "the defendant's interest in avoiding multiple litigation, or inconsistent relief," (iii) "the absentees' interest in avoiding prejudice from the proceeding," and (iv) "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Pulitzer*, 784 F.2d at 1312 (citing and quoting *Patterson*, 784 U.S. at 109-11) (internal quotations omitted). In prior cases, the Fifth Circuit has not hesitated to hold that these factors require dismissal of an action—particularly when the plaintiff whose claim is being dismissed has an alternative forum in which it may assert its claims. *See, e.g., Pulitzer*, 784 F.2d at 1312-13 (applying factors and upholding dismissal); *Hood ex rel. Miss. v. City of Memphis, Tenn.*, 570 F.3d 625, 633 (5th Cir. 2009) (same); *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885, 887-88 (5th Cir. 1979) (same); *Haas v. Jefferson Nat. Bank of Miami Beach*, 442 F.2d 394, 398-400 (5th Cir. 1971) (same).

**B.**  **Chesapeake's Interest in a Federal Forum is Weak Because It Has an Alternative Forum for Its Claims.**

The first interest to be considered is Chesapeake's interest in a federal forum. *See, e.g., Patterson*, 390 U.S. at 109–11; *Pulitzer*, 784 F.2d at 1312. A plaintiff who asserts state-law claims and has an alternative forum for those claims has a "weak" interest in the federal forum:

> Analyzing these interests in this case, [plaintiff's] interest in the federal forum is weak. Relief in the state courts is available to her. The state courts are as convenient to her and her witnesses as the federal court, and the federal court has no special expertise in the subject of her suit.

*Pulitzer*, 784 F.2d at 1312.  When other Rule 19(b) factors weigh in favor of dismissal, the Fifth Circuit has indicated that the existence of an alternative state court forum for the plaintiff's claims is a "compelling" reason to dismiss the federal lawsuit.  *See Doty*, 598 F.2d at 888.

Here, as in *Pulitzer*, Chesapeake's interests in a federal forum are weak.  Chesapeake's claims do not implicate any issues of federal law.  Instead, Chesapeake's claims are quintessential state-law causes of action (*e.g.*, breach of contract, fraud, mutual mistake, unjust enrichment, and money had and received).  Moreover, Chesapeake has an alternative forum in Harrison County where its claims may be heard—indeed, Chesapeake is already party to Harleton's Harrison County Lawsuit, which relates to the same Letter Agreement and same Geisler gas unit that are the subject of Chesapeake's federal court claims.  The Harrison County District Court is particularly well-suited to resolve all of the claims arising out of the Letter Agreement related to the Geisler, including Chesapeake's claims, as those claims are governed by Texas substantive law and relate to real property located in Harrison County, Texas.

**C.     Defendants Would Be Prejudiced If Chesapeake's Claims Are Not Dismissed Because Multiple Litigation Creates Risk of Inconsistent Judgments and Double Liability.**

The second interest to be considered is the defendants' interests in avoiding multiple litigation and inconsistent relief.  *See Pulitzer*, 784 F.2d at 1312 (citing *Patterson*, 390 U.S. at 109-11).  This factor is particularly important when "there is a substantial risk that [the defendant] might face double liability as a result" of the absence of the necessary party or where the defendant might "be forced to pay twice for the same alleged misconduct."  *Id.*

In this case, Chesapeake paid the Freeman Defendants $6.8 million for their interests in the Geisler.  Chesapeake now seeks a "refund" of approximately half that money, which it has characterized as an "overpayment."  Harleton seeks to recover that same alleged "overpayment" from the Freeman Defendants on the grounds that Chesapeake should have paid the money to

Harleton instead of to the Freeman Defendants. If this case proceeds on two separate fronts, with Chesapeake's claims being heard in federal court and Harleton's claims being heard in state court, the Freeman Defendants will be at risk for inconsistent judgments and double liability. For example, if this Court determines that Chesapeake is entitled to recover the alleged overpayment and the state court determines that Harleton is entitled to it, the Freeman Defendants would be "forced to pay twice for the same alleged misconduct"—which is one of the dangers that Rule 19(b) is intended to avoid. *Id.* at 1312-13; *see also* Fed. R. Civ. P. 19(b). In that scenario, the Freeman Defendants would have conveyed their interests in the Geisler to Chesapeake only to later be stripped of ***all*** compensation they received for those interests by two separate and inconsistent judgments. The Freeman Defendants therefore have a strong interest in having Chesapeake's and Harleton's claims heard together and resolved by a single court.

A risk of inconsistent judgments also arises from splitting the Freeman Capital and Harleton claims. Freeman Capital and Harleton assert virtually identical claims against Chesapeake. Both parties contend that they are third party beneficiaries of the Letter Agreement and that Chesapeake breached the Letter Agreement by failing to take and pay for their interests in the Geisler. If Freeman Capital remains in federal court and Harleton in state court, there is a risk that the two different courts will resolve those claims differently. For example, whereas this court might (again) determine that Freeman Capital is a third party beneficiary to the Letter Agreement, the state court could determine that Harleton is not. This would result in an inconsistent judgment.

This factor therefore also weighs in favor of dismissal.

**D.     Harleton Has an Interest in the Determination of Chesapeake's Claims that Cannot Be Protected if Chesapeake Remains in Federal Court.**

The third interest to be considered is Harleton's interest in the outcome of the federal court action. Harleton intervened in this federal court lawsuit as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2). [Dkt. No. 4]. Thus, from the very beginning of this litigation, Harleton has maintained that it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [Harleton's] ability to protect its interests." *See* Fed. R. Civ. P. 24(a)(2). No party opposed Harleton's intervention, and this Court granted Harleton's Motion to Intervene. [Dkt. No. 5]. Accordingly, there appears to be no dispute among the parties that Harleton is situated such that disposing of Chesapeake's claims in its absence would impair Harleton's interests.

That conclusion makes intuitive sense too. As previously observed by this Court, Chesapeake and Harleton seek to recover the exact same pot of money from the Freeman Defendants. *See* Memorandum Opinion and Order [Dkt. No. 209] at 5 ("The dollars awarded to Harleton through this Court's March 22 Order were the same dollars sought by Chesapeake in its Original Complaint."). If Chesapeake's claims were to proceed in Harleton's absence, Harleton would be deprived of the opportunity to explain to the judge or jury hearing Chesapeake's claims that it believes that Harleton—and not Chesapeake—is entitled to recover the money that Chesapeake seeks. Protecting that interest is precisely why Harleton intervened in this case pursuant to Rule 24(a)(2) in the first place.

This Court acknowledged the integral role Harleton plays in this dispute when it entered its earlier summary judgment (i) ordering the Freeman Defendants and the Bufkin Defendants to pay a portion of the Geisler proceeds to Harleton and Freeman Capital, and (ii) ordering Harleton

and Freeman Capital to give assignments of their interests in the Geisler to Chesapeake. That order made Harleton and Freeman Capital the linchpins of the Court's resolution of the Geisler issues. Had Harleton not been in the case, the Court could not have crafted that relief.[3]

Accordingly, this factor also weighs in favor of dismissal.

### E.     Public Interest and Judicial Economy Weigh Strongly in Favor of Dismissal.

The final interest to be considered is "the interest of the courts and public in complete, consistent, and efficient settlement of controversies." *Pulitzer*, 784 F.2d at 1312. Indeed, the Fifth Circuit has directed that the "presence of multiple litigation and its attendant burdens on the parties and the court system should also be considered." *Id.* at 1313. This factor weighs in favor of dismissal when (i) there is no barrier to any of the parties' claims in state court, (ii) the measure of relief is the same in state court as in federal court, and (iii) all parties and witnesses would be available in state court. *Id.*

This factor strongly favors dismissal. Chesapeake's and Freeman Capital's claims may be asserted in the Harrison County Lawsuit. Any relief to which they may be entitled—*e.g.*, monetary damages and/or specific performance of the Letter Agreement—is equally available in state court as in federal court. And all parties and witnesses are available in state court. As such, the courts' and public's interests in judicial economy and efficient resolution of disputes also weighs in favor of dismissal.

### F.     The Prejudice from Multi-Fora Litigation Cannot Be Lessened Through Protective Provisions in the Judgment or Through the Shaping of Relief.

Given the centrality of Harleton's claims to the parties' disputes regarding the Letter Agreement and Geisler funds, the Freeman Defendants and Freeman Capital do not see how a

---

[3] Of course, the Freeman Defendants respectfully continue to assert that neither Chesapeake nor Harleton is entitled to recover any monies from the Freeman Defendants because the funds-at-issue rightfully belong to the Freeman Defendants.

court could lessen the prejudice discussed above through protective provisions in any later judgment or through the shaping of relief.  That said, even if it were possible for this Court and the Harrison County District Court to coordinate in a manner that would mitigate the prejudice associated with proceeding on duel tracks, the Freeman Defendants and Freeman Capital respectfully submit that such steps would not overcome the pragmatic necessity of dismissal.  It would simply be far more efficient to try all of these interrelated claims together in the Harrison County Lawsuit where no one will suffer prejudice from absent parties, the risk of double liability, or the risk of inconsistent judgments.  It is that sort of pragmatic approach that the Fifth Circuit has encouraged and that this Court should use here.  *See Schutten*, 421 F.2d at 873-74.

### III.   CONCLUSION

For the reasons set forth herein, the remainder of this action, in all equity and good conscience, should not proceed without Harleton, and this Court should determine that Harleton is indispensable.  Because the Fifth Circuit determined that this Court lacks jurisdiction over Harleton's claims, the Freeman Defendants and Freeman Capital respectfully request the Court to dismiss this case.

Dated: This 14th day of July, 2014         Respectfully submitted,

/s/ Barton Wayne Cox
Richard S. Krumholz
State Bar No. 00784425
richard.krumholz@nortonrosefulbright.com
Barton Wayne Cox
State Bar No. 24065087
beau.cox@nortonrosefulbright.com
FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Eric M. Albritton
Texas Bar No. 00790215
ema@emafirm.com
Michael Aaron Benefield
Texas Bar No. 24073408
mab@emafirm.com
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
Telephone: (903) 757-8449
Facsimile: (903) 758-7397

*COUNSEL FOR DEFENDANTS WAYNE E. FREEMAN, FREEMAN RESOURCES, LTD., FRM GP LLC AND FREEMAN CAPITAL, LTD.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this notice was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the **14th** day of **July**, 2014.

/s/ Barton Wayne Cox
Barton Wayne Cox

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7, the undersigned certifies that he personally conferred with Brian Tully, counsel of record for Chesapeake, and that counsel confirmed that Chesapeake intends to argue that its claims should be retained in federal court such that the relief sought herein is opposed by Chesapeake.

/s/ Barton Wayne Cox
Barton Wayne Cox