IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHESAPEAKE LOUISIANA, L.P., § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | CIVIL NO. 2:10-cv-359 (JRG) |
| § | | |
| BUFFCO PRODUCTION, INC., ET AL., § | | |
|     Defendants. § | | |

**RESPONSIVE BRIEF OF PLAINTIFF CHESAPEAKE LOUISIANA, L.P.
ADDRESSING INDISPENSABILITY ISSUES**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Pursuant to the Court's Order dated June 30, 2014 (Dkt. No. 237) and in response to the Opening Brief Addressing Indispensability Issues (the "Opening Brief") of Defendants Wayne E. Freeman, Freeman Resources, Ltd. and FRM GP, LLC ("collectively, "Freeman") and Freeman Capital, Ltd. ("Freeman Capital") (Dkt. No. 238), Plaintiff Chesapeake Louisiana, L.P. ("Chesapeake") files its Responsive Brief Addressing Indispensability Issues, and would respectfully show the following:

## INTRODUCTION

All of the claims in this lawsuit arise out of a July 31, 2008 Letter Agreement (the "Letter Agreement") for the purchase and sale of several oil and gas properties in east Texas. The claims between Chesapeake and Buffco Production, Inc. and Twin Resources, LLC (collectively, "Buffco") were dismissed pursuant to a settlement. (Dkt. No. 135). Freeman's claims against Chesapeake (which involved properties other than the Geisler Unit) were decided on summary judgment, and the take-nothing judgment as

to those claims was affirmed. *Opinion*, p. 10 (May 7, 2014). The claims involving the Geisler Unit were also decided on summary judgment,[1] but the Fifth Circuit determined that the intervention by Harleton Oil & Gas, Inc. ("Harleton") destroyed the complete diversity of parties, and Harleton's claims were therefore dismissed for lack of subject matter jurisdiction. *See Opinion*, p. 8.

As noted in the Joint Status Report filed on June 23, 2014 (Dkt. No. 234), two claims remain: (1) Chesapeake's claim against Freeman for an alleged overpayment of $3,808,000 on the Geisler Unit; and (2) Freeman Capital's claim that it is an alleged third-party beneficiary of the Letter Agreement entitled to recover $408,000 from Chesapeake for a 3% working interest in the Geisler Unit. These claims were already decided by this Court in its summary judgment order entered in April 2012. (Dkt. No. 192). But, this Court must now consider whether Harleton is an indispensable party to these claims. If Harleton is an indispensable party to these claims, they should be dismissed; if Harleton is not, this Court will continue to exercise jurisdiction.

Because Chesapeake has already litigated the Geisler Unit claims to a conclusion in this Court, it has a strong interest in maintaining a federal forum, and Texas state court (where Chesapeake would have to begin again) is not an appropriate alternative forum for the remaining claims. Further, Freeman's professed concerns about the potential for "double liability" as to Harleton's claims against Freeman (which will now proceed in Texas state court) and Chesapeake's claims against Freeman can be addressed by

---

[1] The only claims not decided in the Court's prior summary judgment order were the fraud-based claims asserted by Harleton against Buffco and its principal, Mr. Frank M. Bufkin, III, which were severed by this Court into a separate action, which has since been dismissed due to a lack of subject matter jurisdiction as a result of the Fifth Circuit's opinion.

2

protective provisions in a judgment from this Court, such as the constructive trust in the prior summary judgment order. Such protective provisions can also alleviate potential prejudice to any interest that Harleton may have. Therefore, Harleton's presence is not necessary for this Court to award complete relief among Chesapeake, Freeman, and Freeman Capital and Harleton would not be prejudiced by a judgment rendered in its absence. Accordingly, this Court should find that Harleton is not an indispensable party to the remaining claims and continue to exercise jurisdiction.

## ARGUMENT AND AUTHORITIES

After it was apparent that one or more parties would appeal the summary judgment entered by this Court, Harleton filed a lawsuit in the 71st Judicial District Court of Harrison County, Texas (the "state court action") in which it could assert its claims against Buffco, Freeman, and Chesapeake in the event that the Fifth Circuit held that there was no subject matter jurisdiction over Harleton's claims in federal court. Pursuant to the Fifth Circuit's holding, Harleton's claims have been dismissed from this lawsuit due to a lack of subject matter jurisdiction. A consequence of this Court's decision whether Harleton is an indispensable party to this lawsuit will be whether the remaining claims between Freeman, Freeman Capital, and Chesapeake should remain in federal court, or be dismissed in order to proceed in the state court action.

This Court's analysis of whether Harleton is an indispensable party to the remaining claims is guided by Rule 19(b), which sets out four factors which may be considered in determining "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed":

3

879890-1

>   (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
>   (2) the extent to which any prejudice could be lessened or avoided by:
>
>     (A) protective provisions in the judgment;
>
>     (B) shaping the relief; or
>
>     (C) other measures;
>
>   (3) whether a judgment rendered in the person's absence would be adequate; and
>
>   (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).[2]  The Fifth Circuit has summarized this analysis as requiring federal courts to consider:

> interests that affect four categories of persons: the plaintiff, the defendant, the absentees and the public. First to be considered is the plaintiff's interest in a federal forum, second, the defendant's interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another," third, the absentees' interest in avoiding prejudice from the proceeding, and fourth, the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Pulitzer-Polster v. Pulitzer*, 784 S.W.2d 1305, 1312 (5th Cir. 1986) (citing *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-11 (1968)). No matter how they are phrased, these factors weigh against dismissal of the remaining claims.

**A. Chesapeake has a strong interest in maintaining a federal forum, where it has already litigated the Geisler Unit claims to a conclusion.**

Freeman and Freeman Capital assert that Chesapeake has a "weak" interest in a

---

[2] Rule 19, however, "does not exhaust the possible considerations the court may take into account" but "simply identifies those that will be most significant in most cases." 7 *Wright & Miller et al.*, FED. PRAC. & PROC. § 1608, 91; *see also Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970) ("The watchwords of Rule 19 are 'pragmatism' and 'practicality.'").

federal forum because Chesapeake asserts only "quintessential state-law causes of action" which "do not implicate any issues of federal law." *Opening Brief*, p. 5. Freeman and Freeman Capital argue that the state court action would be "particularly well-suited" to resolve the remaining claims involving the Geisler Unit, and "the existence of an alternative state court forum . . . is a 'compelling' reason to dismiss the federal lawsuit." *Opening Brief*, p. 5 (citing *Doty v. St. Mary Parish Land Co.*, 598 F.2d 885, 888 (5th Cir. 1979)).

This argument by Freeman and Freeman Capital views Chesapeake's interest in a federal forum as unchanging over time. That is not legally correct. While a state court action can provide an alternative forum for the resolution of state law claims, Chesapeake's interest in maintaining this forum in federal court has grown as the lawsuit proceeded through discovery and summary judgment in which it essentially prevailed. Once a lawsuit has been decided at the trial court level, the availability of an alternative forum "becomes less significant" because "the winning party's 'interest in preserving a fully litigated judgment should be overborne *only* by rather greater opposing considerations than would be required at an earlier stage.'" *Wright & Miller* § 1608, 127 (emphasis added) (quoting *Provident Tradesmen's*, 390 U.S. at 112).

Had Freeman and Freeman Capital challenged jurisdiction when Harleton intervened shortly after Chesapeake filed the lawsuit, a state court action might have presented an appropriate alternative forum for any claims arising out of the Letter Agreement because, at that time, Chesapeake's interest in maintaining a federal forum would have been weaker. But Freeman and Freeman Capital waited to raise this issue

5

until *after* the parties completed discovery and *after* this Court had already decided the Geisler Unit claims on the merits. *See* (Dkt. No. 194, p. 2); (Dkt. No. 197). Therefore, Chesapeake now has a strong interest in keeping the remaining claims in this Court.

This Court has already decided the remaining claims once through summary judgment. As a result, forcing the parties to start again in the state court action would not be an appropriate alternative to a final adjudication of the remaining claims by this Court, and Chesapeake therefore has a strong interest in maintaining a federal forum. If the remaining claims must now be heard in the state court action, Chesapeake will be prejudiced by having to try its claims a second time. Accordingly, this factor weighs against dismissal.

**B.      Forcing the parties to start over in the state court action would be inefficient.**

Federal courts are obligated to seek out alternatives to dismissing the action, particularly when, as is the case here, all the parties cannot be joined in an equally satisfactory forum. *Wright & Miller* § 1608, 105-06. As an example, in *Hudson v. Newell*, 172 F.2d 848 (5th Cir. 1949), *modified on other grounds by* 174 F.2d 546, the court "concluded that it could not grant complete relief, but retained the action nonetheless in order to determine rights in the land among those parties who were before it." *Wright & Miller* § 1608, 107-08 (discussing the *Hudson* decision). Similarly, the Supreme Court has noted that

> It might have been preferable, at the trial level, if there were a forum available in which both the company and Dutcher could have been made defendants, to dismiss the action and force the plaintiffs to go elsewhere . . . . By the time the case reached the Court of Appeals, however, the problematical preference on efficiency grounds had entirely disappeared: *there was no reason then to throw away a valid judgment just because it*

6

*did not theoretically settle the whole controversy*.

*Provident Tradesmen's*, 390 U.S. at 116 (emphasis added).

Similarly, although any judgment from this Court will not resolve the claims by Harleton against Buffco and Freeman, that is no reason for this Court to dismiss the remaining claims among Chesapeake, Freeman, and Freeman Capital. Accordingly, this factor also weighs against dismissal.

C. **Freeman's professed interest in avoiding "double liability," or any potential prejudice to Harleton, can be alleviated through protective provisions in a judgment from this Court.**

In its prior decision granting summary judgment, this Court, among other things, ordered Freeman to relinquish the $3,808,000 overpayment that it received in connection with the Geisler Unit and imposed a constructive trust for the benefit of Freeman Capital.[3] (Dkt. No. 192). In doing so, this Court demonstrated the sort of protective provisions appropriate to protect each party's interest, even though the relief awarded was different from the relief requested by the parties. *See Wright & Miller* § 1608, 105-06 (stating that Rule 19(b) "calls the court's attention to the *possibility of granting remedies other than those specifically requested*" in order to "minimize or eliminate any prejudicial effect of going forward without" the absentee party) (emphasis added). Through the creative use of similar protective provisions, this Court could again fashion a remedy which would eliminate any concern that Freeman would be subjected to so-called "double liability" and also alleviate any potential prejudice to Harleton.

---

[3] Applying the reasoning of this Court's prior decision on summary judgment, Freeman Capital could have, alternatively, recovered from Freeman directly, but as noted earlier, Freeman Capital asserted claims against Chesapeake, but did not assert any claims against Freeman. *See* (Dkt. No. 194), pp. 1-2.

7

In creating protective provisions for the judgment, the Court is not limited to provisions which only address parties, such as Freeman or Chesapeake, but can also craft provisions addressing the interests of non-parties, such as Harleton. For example, in *McCormick & Co. v Bedford Indus., Inc.*, the plaintiff brought an action seeking contract damages and recission, but the property which was the subject of the contract (and which would have to be conveyed to the defendant if the plaintiff succeeded in the lawsuit) was actually held by the plaintiff's wholly-owned subsidiary, the joinder of which would defeat diversity jurisdiction. 301 F.Supp. 29, 35 (D. Md. 1969). Nonetheless, the federal court in that case "ruled that it could proceed without joining the subsidiary by including an appropriate provision in the judgment 'providing that any right of rescission granted plaintiff shall be conditioned upon plaintiff causing . . . its subsidiary to perform whatever acts may be required.'" *Wright & Miller* § 1608, 110 (discussing the holding of *McCormick & Co.*, 301 F.Supp. at 35).

Therefore, this Court has the power to fashion a remedy in which Freeman Capital (or for that matter, Harleton, which is in the "exact same position" as Freeman Capital regarding the Letter Agreement) could recover either directly from Freeman, or through a constructive trust imposed for its benefit. Accordingly, Freeman's interest in avoiding "double liability" and Harleton's interest in avoiding prejudice from a judgment rendered in its absence can be addressed by appropriate protective provisions in the judgment to be entered by this Court, such as the constructive trust remedy fashioned by this Court in its prior summary judgment order. Doing so would be an appropriate way to resolve the remaining claims, while adequately protecting any interest which Harleton might have.

879890-1

Accordingly, these factors also weigh in favor of keeping the remaining claims in federal court.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court continue to exercise jurisdiction over the remaining claims, as Harleton is not an indispensable party, and grant such other and further relief to which Plaintiff may be justly entitled.

        Respectfully submitted,

        By:   s/Jesse R. Pierce
            Jesse R. Pierce
            State Bar No. 15995400
            *Attorney in Charge*

PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3636  Direct
(713) 634-3600  Main
(713) 634-3601  Fax
jpierce@pierceoneill.com

*Counsel for Plaintiff Chesapeake Louisiana, L.P.*

OF COUNSEL:

Brian K. Tully
State Bar No. 24039217
PIERCE & O'NEILL, LLP
4203 Montrose Boulevard
Houston, Texas 77006
(713) 634-3608  Direct
(713) 634-3600  Main
(713) 634-3601  Fax
btully@pierceoneill.com

879890-1

Collin Maloney
State Bar No. 00794219
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, Texas 75703
(903) 561-1600  Main
(903) 581-1071  Fax
cmaloney@icklaw.com


## CERTIFICATE OF SERVICE

I certify that on July 24, 2014, a true and correct copy of the foregoing document was filed with the court via its ECF system, which will send notification of such filing to all counsel of record.

                                                 s/ Jesse R. Pierce
                                                 Jesse R. Pierce