IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CHESAPEAKE LOUSIANA, L.P., | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 2:10-cv-359 |
| | § | |
| BUFFCO PRODUCTION, INC., TWIN | § | |
| RESOURCES, LLC, WAYNE E. | § | |
| FREEMAN, FREEMAN CAPITAL, | § | |
| LTD., FREEMAN RESOURCES, LTD., | § | |
| and | § | |
| FRM GP, LLC | § | |
| | § | |
| *Defendants* | § | |

**ORDER**

### I.     Introduction

This matter is before the Court on remand from the United States Court of Appeals for the Fifth Circuit.  This sole issue to be considered on remand is whether or not intervenor Harleton Oil & Gas, Inc. ("Harleton") is indispensable to Plaintiff Chesapeake Louisiana, LP's ("Chesapeake's") claims regarding the working interest in the so-called Geisler Unit.

Having considered the Fifth Circuit's opinion, the parties' briefing, and the entire record, the Court is persuaded that Harleton is an indispensable party as to the Geisler Unit claims. Accordingly, this action should be dismissed under Federal Rule of Civil Procedure 19(b), with respect to the Geisler Unit Claims only.  The Court therefore **ORDERS** that the Geisler Unit claims in this action are **DISMISSED WITHOUT PREJUDICE**.

1

## II.    Procedural History

Plaintiff Chesapeake Louisiana, LP ("Chesapeake") filed this action on September 13, 2010.  Chesapeake brought several state-law claims against defendants Buffco Production, Inc. and Twin Resources, LLC (collectively, "Buffco"), Wayne E. Freeman and Freeman Resources (collectively, the "Freeman Defendants"), and Freeman Capital, Ltd. ("Capital") arising out of a July 31, 2008 Letter Agreement (the "Letter Agreement") entered into between Chesapeake and Buffco.  Pursuant to the Letter Agreement, Chesapeake would acquire the working interests of Buffco and its non-operating leasehold cotenants as to multiple oil and gas units in several counties in East Texas, including a 100% working interest in the Geisler Unit.

In its complaint, Chesapeake alleged that it had paid $13,600,000 for a 100% working interest in the Geisler Unit, but did not receive that 100% interest through the assignments it received from Buffco and the Freeman Defendants.  Accordingly, Chesapeake filed suit to recover its alleged overpayment.  Buffco and the Freeman Defendants counterclaimed against Chesapeake, alleging that Chesapeake failed to purchase their interests in other oil and gas units pursuant to the Letter Agreement.  Capital also filed a counterclaim against Chesapeake, alleging that Chesapeake failed to purchase its 3% working interest in the Geisler Unit.  Chesapeake, Buffco, the Freeman Defendants and Capital denied the claims and counterclaims against themselves, respectively, and asserted various defenses.

On October 27, 2010 the Court granted Harleton's motion to intervene in this action. Harleton owns a 50% working interest in the Geilser Unit, and asserted claims against Chesapeake, Buffco, the Freeman Defendants and Capital in order to recover $6,800,000 (or one half of the Chesapeake's payment to Buffco and the Freeman Defendants).

2

During discovery, it was determined that the disputed working interest of the Geisler Unit was held 50% by Harleton, 25% by Buffco, 22% by the Freeman Defendants, and 3% by Capital. It was also confirmed that Buffco and the Freeman Defendants each received 50% of the $13,600,000 that Chesapeake paid in connection with this unit.  Having determined that Capital did not receive any portion of the $13,600,000, Chesapeake abandoned its claims against Capital in its First Amended Complaint filed on June 21, 2011.  (Dkt. No. 71).  Also, due to the settlement between Chesapeake and Buffco in December 2011, all the claims by and between those parties were dismissed. (Dkt. No. 135).  At the time of the hearing on the various motions for summary judgment filed by the parties, the claims remaining for determination in this lawsuit were:

- Chesapeake's claims against the Freeman Defendants in connection with the Geisler Unit.

- The Freeman Defendants' claims against Chesapeake in connection with other properties under the Letter Agreement (the Bowen, Hemby, and Yow Units).

- Capital's claims against Chesapeake in connection with the Geisler Unit.

- Harleton's claims against Chesapeake, Buffco, and the Freeman Defendants in connection with the Geisler Unit (including certain fraud claims asserted by Buffco and Mr. Bufkin in connection with the Geisler Unit which were subsequently severed into a separate cause).

This Court subsequently entered a Memorandum Opinion and Order granting summary judgment (Dkt. No. 212).  Specifically, the Court ordered:

(1) Buffco and the Freeman Defendants to each pay $3.4 million (for a total of $6,800,000, representing the amount to be paid under the Letter Agreement for a 50% working interest in the Geisler Unit) to Harleton, plus prejudgment interest;

(2) The Freeman Defendants to pay $408,000 to Capital (representing the amount to be paid under the Letter Agreement for a 3% working interest in the Geisler Unit);

(3) Harleton and Capital to convey their working interests in the Geisler Unit to Chesapeake; and

The Court also entered a take nothing judgment on the Freeman Defendants' counterclaim against Chesapeake in connection with other oil and gas units.

The Freeman Defendants, Capital, Buffco, and Buffco's principal Frank M. Bufkin, III then challenged this Court's subject matter jurisdiction, arguing that Harleton's intervention destroyed the complete diversity of parties necessary for jurisdiction under 28 U.S.C. § 1332. This Court denied the Motions to Dismiss (Dkt. No. 209) and entered Final Judgment (Dkt. No. 213).  The Freeman Defendants, Buffco and Harleton timely appealed said judgment.

The Fifth Circuit issued an opinion on May 7, 2014, affirming this Court's summary judgment in part, but concluding that that this Court should have aligned Harleton with Chesapeake as a plaintiff-intervenor.  *Chesapeake Louisiana, L.P. v. Buffco Prod., Inc.*, 564 Fed. Appx. 751 (5th Cir. May 7, 2014).  Harleton, like the Freeman Defendants, Buffco, and Capital, is a citizen of Texas.  As a result, the Fifth Circuit found that Harleton's joinder deprived the Court of diversity jurisdiction over the Geisler Unit claims.  Accordingly, the Fifth Circuit vacated this Court's grant of summary judgment with respect to the Geisler Unit claims[1] and

---

[1]The Fifth Circuit expressly affirmed this Court's decision with respect to the Bowen, Hemby,

4

remanded those claims "to allow the district court to consider in the first instance whether Harleton is an indispensable party such that dismissal of the entire action concerning the Geisler Unit is required." *Chesapeake Louisiana, L.P. v. Buffco Prod., Inc.*, 564 Fed. Appx. 751 (5th Cir. May 7, 2014).

On Remand, both the Freeman Defendants and Capital argue that Harleton is indispensable to the remaining Geisler Unit Claims and argue that the case should be dismissed. Accordingly, the Court hereafter refers to those parties collectively as "Free-Cap." Chesapeake and Harleton oppose such a dismissal, arguing that Harleton is not an indispensable party under Federal Rule of Civil procedure 19(b).

## III.    Applicable Law

Federal Rule of Civil Procedure 19 governs the required joinder of parties.  Rule 19(a) requires, in pertinent part, that:

> (1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i)   as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If person a necessary party cannot be joined—e.g., because joinder would deprive the Court of diversity jurisdiction—"the court must then determine whether that person is 'indispensable,' that is, whether litigation can be properly pursued without the absent party."

---

and Yow Units, because Harleton's claims were limited to the Geisler Unit.

*Hood ex rel Mississippi v. City of Memphis*, 570 F.3d 625, 629 (5th Cir. 2009).  Rule 9(b) sets

out four factors which the Court should consider in making this determination:

> (1) the extent to which a judgment rendered in [Harleton's] absence might prejudice [Harleton] or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in [Harleton's] absence would be adequate; and
>
> (4) whether [Chesapeake] would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 9(b).

## IV.    Discussion

The Fifth Circuit has already held that Harleton is a necessary party under Rule 19(a) and

remanded the case solely for a determination of "whether Harleton is an indispensable party such

that dismissal of the entire action concerning the Geisler Unit is required" under Rule 19(b).  *See*

*Chesapeake Louisiana, L.P. v. Buffco Prod., Inc.*, 564 Fed. Appx. at 756.  In making such a

determination, the Court applies the Rule 19(b) factors pragmatically, taking into account the

realities of the situation, *see Schutten v. Shell Oil Co.*, 421 F.2d 869, 873-74 (5th Cir. 1970).  The

Court also considers the "interests that affect four categories of persons":

> First to be considered is the plaintiff's interest in a federal forum, second, the defendant's interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another," third, the absentees' interest in avoiding prejudice from the proceeding, and fourth, the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1312 (5th Cir. 1986) (citing *Provident Tradesmen's*

*Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-11 (1968)).  For the reasons discussed below,

the Court finds that Chesapeake's interest in the Federal Forum is weak and that allowing this case to go forward would prejudice both Free-Cap and the public.

### A.  Chesapeake's Interest in the Federal Forum

The Fifth Circuit has held that a plaintiff's interest in a federal forum is weak, where it may seek relief in the state courts.  *See Pulitzer*, 784 F.2d at 1312.  Free-Cap argues that Chesapeake and Harleton have a particularly weak interest in a federal forum, because their Geisler Unit claims assert "quintessential state-law causes of action" that "do not implicate any uses of federal law."  Dkt. No. 238 at 5.  Harleton's only response is that "[h]owever strong or weak, [Chesapeake's] interest in litigating in a federal forum is legitimate and weighs in favor of retaining jurisdiction of [sic] Chesapeake's claims."  Similarly, Chesapeake concedes that its interest in the federal forum was weak at the outset of this case, but argues that its interest in "maintaining this forum in federal court has grown as the lawsuit proceeded through discovery and summary judgment in which [Chesapeake] essentially prevailed."  Dkt. No. 240 at 5.

The Court is not persuaded that the procedural history of this case significantly strengthens Chesapeake's interest in a federal forum.  Chesapeake may obtain complete relief in state court.  In fact, it is already a party to a lawsuit in state court regarding the Geisler Unit claims.  *See Harleton Oil & Gas, Inc. v. Bufkin, et al.*, No. 12-0517, 71st District Court of Harrison County, Texas.  Said state court is as convenient to Chesapeake and its witnesses as this Court—the two are situated only a few hundred feet apart; and, this Court has no special expertise in the subject matter of this suit which would exceed that of the state court.  For all of these reasons, Chesapeake's interest in maintaining a federal forum is weak, and such weakness favors dismissal under Rule 19(b).  *See Pulitzer,* 784 F.3d at 312.

### B.  Free-Cap's Interest in Avoiding Duplicative Litigation.

In contrast to Chesapeake's interest in a federal forum; Free-Cap's interest in avoiding duplicative litigation is clear.  As discussed above, Harleton has filed a lawsuit in state court that seeks to adjudicate the same Geisler Unit claims that are before this Court on remand.  In that suit it seeks to recover from Free-Cap for the same "overpayment" that forms the basis for Chesapeake's claims in this action.  If both suits to go forward, the parties may be granted inconsistent relief, or Free-Cap may face double liability.  Such concerns weigh against retaining this case.  *Pulitzer,* 784 F.3d at 313.

Chesapeake and Harleton counter that the Court could mitigate this risk through the "creative use" of protective provisions, *e.g.*, the imposition of a constructive trust.  Dkt. No. 240 at 7-8.  While Rule 19(b) expressly contemplates such protective measures, the Court does not believe that they are sufficient in this case.  Neither Chesapeake nor Harleton explains how this Court could fashion creative protective provisions that would bind the state district court, or otherwise prevent the prejudice that might result from inconsistent findings among the two courts.

### C.  Harleton's Interest in Avoiding Prejudice and the Public's Interest in Complete, Consistent, and Efficient Settlement of Controversies

Harleton argues that it would not be prejudiced by its absence, should this case go forward.  Dkt. No. 239.  However, this is because Harleton is confident that its claims will be heard in state court.  *Id.*  In other words, Harleton is unconcerned with its absence from this case because it remains free to pursue its claims against Free-Cap (or Chesapeake) in the pending, duplicative state court action.  Harleton further argues that, if it recovers against Chesapeake in state Court, "this Court may then complete the circle."  However, the courts favor "settling

8

disputes by wholes, whenever possible." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968).   Moreover, "[t]he presence of multiple litigation and its attendant burdens on the parties and the court system should also be considered" in deciding whether Rule 19(b) requires dismissal.   *Pulitzer*, 784 F.2d at 1313.   The litigation procedure suggested by Chesapeake and Harleton exposes the courts (and thereby the public) to the unnecessary expenses associated with duplicative litigation.   Accordingly, the public's interest in efficient and complete dispute resolution supports the dismissal of this case under Rule 19(b).

## V.   Conclusion

For the reasons stated above, the Court finds that Harleton is indispensable to the remaining Geisler Unit claims.   Accordingly, the Court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE** as to the Geisler Unit Claims.   The Court's prior summary judgement order and resulting final judgment having been affirmed as to all disputed units and properties except the Geisler Unit, the Clerk is now direct to close this case.

**So ORDERED and SIGNED this 14th day of November, 2014.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE